585 A.2d 294

**Walter HASELRIG**

v.

**PUBLIC STORAGE, INC.**

**No. 666, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Feb. 6, 1991.

Irving Greenberg, Rockville, for appellant.

Edward J. Gutman (Blum, Yumkas, Mailman, Gutman & Denick, P.A., on brief), Baltimore, for appellee.

Argued before GARRITY, BLOOM and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

A single question is presented by Walter Haselrig, appellant, in this appeal from the judgment of the Circuit Court for Prince George's County, namely:

Whether the lower court erred in granting appellee's [Public Storage, Inc.'s] motion to dismiss appellant's complaint for failure to state a cause of action.[1]

---

**1.** As will be seen when the facts are recounted, in response to appellant's complaint, appellee filed a Motion to Dismiss Or, Alternatively, Motion For Summary Judgment. Filed with that motion was a copy of the employee handbook issued by appellee to appellant, when he was hired and to which appellant referred in his complaint. Appellee filed a Memorandum of Points and Authorities in support of the motion, and an affidavit attesting to the truth, accuracy, and applicability of the handbook during the critical period. Ruling on appellee's motion, the lower court dismissed appellant's complaint, "it appearing as a matter of law that the Complaint (Counts I and II) fail to state a claim upon which relief can be granted...."

Focusing on the language of the court's order and relying upon the office of the motion to dismiss—to test the legal sufficiency of the pleadings to state a cause of action—*see* Maryland Rule 2–322(b); *Ungar v. State,* 63 Md.App. 472, 479, 492 A.2d 1336 (1985), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 604 (1986); *Sharrow v. State Farm Mutual Auto Insurance Co.,* 306 Md. 754, 762, 511 A.2d 492 (1986), appellant, first, contends that, because the court relied upon provisions of the employee handbook not well pleaded by him, it improperly granted the motion to dismiss. As we see it, despite the language used in the order, the court's ruling was on the motion for summary judgment. *See Castiglione v. Johns Hopkins Hospital,* 69

We will hold, as to count one, that it did; consequently, we will reverse and remand for trial on that count. The court's ruling as it pertains to count two was not error; hence, as to it, we will affirm.

## COUNT ONE

In Count One, captioned "Wrongful Discharge", of his two-count complaint, appellant alleged that upon his entering into an employment contract with appellee he received a copy of appellee's "Employee Handbook," which contained a statement of its purpose and a listing and summary of appellee's policies and practices. Appellant's complaint alluded to several of those policies and practices as important elements of his claim. Among the policies and practices to which appellant referred were those relating to "Probationary Period",[2] "Work Rule Violations and Corresponding Disciplinary Action"[3] and "Termination", more particularly "Involuntary Dismissal". The latter provision, pertinent to the case *sub judice,* provides:

*Involuntary Dismissal*

---

Md.App. 325, 332, 517 A.2d 786 (1986), *cert. denied,* 309 Md. 325, 523 A.2d 1013 (1987).

**2.** That section provided:
> The initial period of employment should be a time of review for both you and the Company. In order to determine that each new association is mutually satisfactory, new Employees are hired on a 180–day probationary basis. This probationary period gives you an opportunity to demonstrate satisfactory personal conduct, work habits, appropriate attendance and punctuality, performance, interpersonal skills, and technical qualifications for your job, and for you to evaluate the Company as an employer.
> Following the successful completion of ninety days of employment, you will receive a preliminary evaluation of your performance. At the completion of 180–days, from the date of hire, you will receive a written evaluation of your performance.
> It should be understood that employment and compensation can be terminated, with or without cause and with or without notice at any time, at the option of either the Company or the Employee.

**3.** The section detailed "[o]ffenses which will result in suspension without pay and may result in termination". In his complaint, appellant denied that any of the fifteen enumerated offenses applied to him.

If, after attaining regular status, following the successful completion of your probationary period, you are not satisfying your job performance requirements, you will be counseled by your Supervisor and given a reasonable opportunity to improve. If reasonable means of improving performance have been attempted and you still do not meet job requirements, you may be terminated involuntarily.

You may be dismissed without notice or pay in lieu of notice for violating work rules, business ethics or committing any serious act.

Alleging that he had completed his probationary period and had not violated any of the enumerated violations, and relying on the provision just cited, appellant asserts that his termination for "failure to meet dates for certificates of occupancy" was wrongful. According to the complaint "the provisions contained in the 'Employee Handbook' regarding Plaintiff and Defendant's employment relation became contractual obligations in that with knowledge of these provisions the Plaintiff embarked upon and continued his work for the Defendant."

Rather than file an answer, appellee moved to dismiss the complaint, or, alternatively, for summary judgment, on the ground that the "Employee Handbook" contained disclaimers and, therefore, could not constitute an express or implied contract. In support of this argument, appellee directs our attention to the provision in the handbook, captioned "Employment Relationship", which provides:

The relationship between you and PSI is *predicated* on an at will basis. That is to say that either the Employee or the Company may terminate their employment at their discretion. (Emphasis added)

Like appellant, appellee also found the provision pertaining to the probationary period and, in particular, its last paragraph, significant. It provides:

It should be understood that employment and compensation can be terminated, with or without cause and with or

without notice at any time, at the option of either the Company or the Employee.

Relying on *Castiglione v. Johns Hopkins Hospital,* 69 Md.App. 325, 339–40, 517 A.2d 786 (1986), appellee maintains that these provisions are "disclaimers", which expressly negate, in clear and conspicuous language, any notion that a contractual relationship other than "at-will" was intended or contemplated by the Employee Handbook.[4]

 When reviewing the trial court's grant or denial of a motion for summary judgment, because that decision involves issues of law, not fact, the appellate court determines whether the trial court was legally correct. *Heat and Power v. Air Products,* 320 Md. 584, 591, 578 A.2d 1202 (1990), citing Maryland Rule 2–501 and *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985). And, because the choice between permissible factual inferences is a matter of fact, not law, which, therefore, must be made by the finder of fact when the underlying facts are undisputed but susceptible of more than one permissible factual inference, a trial court is legally incorrect if it grants summary judgment. *Id.* Under those circumstances, the appellate court must reverse. *Id.*

---

**4.** Appellant relied upon several other handbook provisions and, appellee, in sub-arguments, sought to refute them. The existence of a disclaimer in the handbook is critical to each refutation. Thus, appellee argues, in the face of a disclaimer, inclusion of a schedule of offenses in an Employee Handbook does not buttress a wrongful discharge claim. It cites *Pratt v. Brown Machine Co.,* 855 F.2d 1225, 1234 (6th Cir.1988); *Reid v. Sears, Roebuck and Company,* 790 F.2d 453, 460–61 (6th Cir.1986); *Sullivan v. Snap–On Tools Corp.,* 708 F.Supp. 750, 752 (E.D.Va.1989), *aff'd,* 896 F.2d 547 (4th Cir.1990). Similarly, it continues, where a handbook contains a disclaimer, the completion of a probationary period does not create an employment contract. *Nork v. Fetter Printing Company,* 738 S.W.2d 824, 827 (Ky.App.1987). The same result obtains, we are told, in the case of a handbook which contains both a disciplinary procedure and a disclaimer that any relationship other than at-will is intended. *Eldridge v. Evangelical Lutheran Good Samaritan Society,* 417 N.W.2d 797, 800 (N.D.1987); *Dell v. Montgomery Ward & Company,* 811 F.2d 970, 973–74 (6th Cir.1987).

The facts of this case, for purposes of the motion for summary judgment, are not in dispute.[5] It is not disputed that appellant was given, at the time of his hire, an Employee Handbook setting forth the provisions upon which the parties rely. What is at issue is the justifiability of appellant's reliance upon those provisions of the handbook detailing the termination procedures in cases of involuntary dismissal. Related to this issue, and, indeed, critical to its resolution, is the question of the interpretation of those handbook provisions which appellee characterizes as "disclaimers."[6]

It is well-settled that an employer who hires an employee for an indefinite period may, at his or her pleasure, discharge that employee at any time. *Adler v. American Standard Corp.*, 291 Md. 31, 35, 432 A.2d 464 (1981). That rule does not apply, however, where "an employer communicates personnel policy statements to its employees which '... limit the employer's discretion to terminate an indefinite employment or that set forth a required procedure for termination of such employment ...', such statements, if justifiably relied on by its employee, may, '... become contractual undertakings by the employer that are enforceable by its employee.'" *Fournier v. USF & G*, 82 Md.App. 31, 37, 569 A.2d 1299, *cert. denied*, 319 Md. 581, 573 A.2d 1337 (1990), *quoting Staggs v. Blue Cross of Maryland, Inc.*, 61 Md.App. 381, 392, 486 A.2d 798, *cert.*

---

5. Appellee's Memorandum of Points and Authorities indicated that it disputed terminating appellant without following the disciplinary procedures set out in the handbook; however, "for purposes of this motion, the Court may assume the allegation to be true."

6. Appellee makes much of the fact that appellant's opposition was not supported by affidavit, while the motion for summary judgment was. We are not persuaded. The affidavit supporting appellee's summary judgment motion merely attested to the fact that the handbook it filed with its motion, and upon which it and appellant relied, was "a true and accurate copy" of the one issued by appellee to appellant, and which was "in effect" when appellant was terminated. None of these representations were contested by appellant, who simply disputed appellee's interpretation of certain of the handbook's provisions.

*denied,* 303 Md. 295, 493 A.2d 349 (1985). *See also Dahl v. Brunswick Corp.,* 277 Md. 471, 475, 356 A.2d 221 (1976) ("[Brunswick's] policy directive with respect to severance pay constituted an offer of a unilateral contract of which the employees were aware and, by continuing to work for Brunswick, accepted.").

The policy directive to which we referred in *Staggs* provided, in pertinent part:

IV. Employees terminated due to dismissal are subject to the following conditions:

A. Except in extreme cases when dismissal will be immediate, employees will be given at least two formal counseling sessions by their supervisors and/or manager before final dismissal. All formal counseling sessions must be first reviewed with the Employment and Employee Relations Department prior to any discussion with the employee. Formal counseling sessions with employees must be substantiated in writing by filing form 5.65 Problem Solving Report with the Employment and Employee Relations Department. During the second counseling session, the employee will be advised that continuance of the problem may result in dismissal. Failure to sign form 5.65, Problem Solving Report after it has been discussed, may provide grounds for immediate dismissal.

\* \* \* \* ~ \*

E. An employee may be dismissed at any time for cause without liability to Blue Cross and Blue Shield of Maryland.

61 Md.App. at 384–85, 486 A.2d 798. Neither Staggs nor any of the other appellants in that case were hired with a fixed contract or term of employment, "although all were covered by certain personnel policies adopted by Blue Cross, as set forth in a 1975 policy memorandum." *Id.,* 61 Md. App. at 384, 486 A.2d 798. Its obvious rationale, and that of *Dahl,* as well, is that legitimate expectations of employ-

ees engendered by employee manuals or policy directives issued by employers, ought to be protected.

While in *Staggs* and *Dahl* the facts and circumstances were such as to permit an inference of justifiable reliance on policy directives, *Castiglione v. Johns Hopkins Hospital,* 69 Md.App. 325, 517 A.2d 786 (1986), *cert. denied,* 309 Md. 325, 523 A.2d 1013 (1987) and *Fournier, supra,* upon which appellee relies, are cases in which the opposite was true.

In *Castiglione,* a discharged employee alleged that, in discharging her, the hospital violated a provision in the employee handbook it had given her when she was hired. We affirmed the trial court's grant of summary judgment, noting that the handbook contained an express disclaimer:

> Finally, this handbook does not constitute an express or implied contract. The employee may separate from his/her employment at any time; the Hospital reserves the right to do the same.

69 Md.App. at 329, 517 A.2d 786. The employee manual in *Fournier* did not contain an express disclaimer of the kind found sufficient in *Castiglione;* rather, prominently appearing on the application for employment which the employee signed, was the following:

> I understand that, if I am employed, it will be for a trial period of three months; that, if in the judgment of the Company I am unsuitable during this period, the employment may be terminated by the Company without notice; and that, after this trial period, the employment may be terminated by either party at will upon two weeks notice to the other. In any event, all obligation on the Company's part as respects salary shall end with the last day I work.

82 Md.App. at 33, 569 A.2d 1299. We found this statement to be a sufficient disclaimer to foreclose any justifiable reliance, by the employee, on any provision in the handbook. Consequently, as in *Castiglione,* we affirmed the trial

court's grant of summary judgment in favor of the employer. 82 Md.App. at 42, 569 A.2d 1299.

██ Appellee maintains that, like *Castiglione*, its employee handbook contains an express disclaimer and, indeed, that it is located in at least two places in the handbook. It directs our attention to the sections captioned "Employment Relationship" and "Probationary Period." It invites us to interpret these provisions, believing that, when we do, we will find that they contain "disclaimers" and, therefore, support the court's summary judgment ruling. In other words, it is appellee's position that the only critical inquiry in this case is the existence, *vel non*, of an express disclaimer.

Appellant, not surprisingly, sees the issue differently. In his view, it is the intent of the parties that is at issue; did they intend that a contract be created by the employee handbook? Since that determination is a factual matter, where the evidence is conflicting or admits of more than one reasonable inference, summary judgment is inappropriate. Appellant, therefore, believes that the issue cannot be resolved without considering and construing the entire handbook, or at the very least, all relevant provisions.

Appellant's action is premised upon the existence of a contractual relationship transforming an at-will relationship into one in which termination can only occur after certain procedures have been followed. The theory of appellant's complaint is that, although he was hired as an at-will employee, that relationship was changed consistent with certain of the provisions in the handbook that appellee gave him when he was hired. In particular, appellant alleged that the involuntary dismissal section of the "Termination" provision set forth a specific procedure which appellee agreed to follow before terminating a non-probationary employee. When appellee terminated him, a non-probationary employee, without following that procedure, appellant alleged that it, thereby, breached its employment contract with him.

Appellee defended on the ground that, because it contains disclaimers, the employee handbook was not intended to be and, in fact, could not have been intended to be, an offer of a contract which appellant could accept by working for appellee. The disclaimers, it argued, foreclosed any justifiable reliance by appellant on any of the provisions in the handbook.

Thus, critical to the position of both appellant and appellee is the resolution of the question whether appellee's dissemination of the employee handbook to appellant, coupled with his continued employment with appellee, resulted in the transformation of appellant's at-will contract into one precluding termination except in accordance with the handbook provisions. Stated differently, at issue is whether appellant could justifiably have relied upon the handbook and the employer/employee relationship it reflected, as modifying his employment relationship with appellee.

"That, as a general rule, the construction or interpretation of all written instruments is a question of law for the court is a principle of law that does not admit of doubt.... However before the court can construe a contract, there must exist a contract; and, if it be claimed an instrument of writing, although in form a complete agreement, was not intended by the parties to be binding upon them, the question as to whether or not the instrument was so intended is one for the jury...." (Citations omitted). *Gordy v. Ocean Park, Inc.*, 218 Md. 52, 60, 145 A.2d 273 (1958). In this case, as we have seen, appellant maintains that there was a contract, while appellee maintains that there was not. In fact, as we have also seen, appellee insists that, in order to demonstrate the correctness of its position, we need do no more than interpret the provisions it maintains are disclaimers: if they are disclaimers, then, as appellee argues, appellant could not justifiably rely on any other provisions in the handbook. *See Castiglione, supra* and *Fournier, supra.*

In neither *Castiglione* nor *Fournier* was the issue the construction of the provisions found to be disclaimers. In *Castiglione*, it was conceded that the provision was an

express disclaimer. 69 Md.App. at 334–35, 517 A.2d 786. In *Fournier*, the employee conceded that he knew or should have known, when he applied for employment, that the employer "disclaimed any intention of employing appellee for a fixed term or of limiting its discretion to terminate appellant's employment at its pleasure." 82 Md.App. at 37, 569 A.2d 1299. Thus, in both of those cases, there was no dispute as to the meaning of the provisions at issue. Unlike *Castiglione* and *Fournier*, we must construe the subject provisions for sufficiency as disclaimers.

In this case, appellant makes two arguments: 1) given the totality of the circumstances, the provisions in the handbook, upon which appellee relies, would not negate the justifiability of his reliance on other provisions in that handbook as contractual undertakings by appellee and 2) the provisions characterized by appellee as "disclaimers" are not, in fact, "disclaimers."

Appellee relies upon the statement of the Employment Relationship, *i.e.*,

The relationship between you and PSI is predicated on an at will basis. That is to say that either the Employee or the Company may terminate their employment at their discretion,

and the last paragraph of the Probationary Period provision, which provides:

It should be understood that employment and compensation can be terminated, with or without cause and with or without notice at anytime, at the option of the Company or the Employee.

These provisions are not necessarily contractual provisions; hence, our only purpose in reviewing them is to determine whether, in the face of them, an employee could rely on the employee handbook as changing the nature of his or her employment. Put another way, we seek the intention of the employer in including the provisions in the handbook.

The clarity with which a provision in the employee handbook disclaims contractual intent will determine the

viability of an employee's claim that he or she justifiably relied on provisions in that handbook. Therefore, we review the provisions to determine whether they are clear and unequivocal or ambiguous and equivocal. Although the provisions themselves are not contracts, the determination must be approached in a fashion similar to that utilized in interpreting contracts: we must consider the nature of the provision, its apparent purpose and any facts and circumstances that bear on its meaning. If we determine that the language of the provisions is ambiguous—an ambiguity exists when the language in the provision is, to a reasonably prudent layman, susceptible of more than one meaning, *Truck Insurance Exchange v. Marks Rentals, Inc.,* 288 Md. 428, 433, 418 A.2d 1187 (1980), or where the placement of the provisions in the handbook has that effect—and/or equivocal, then the issue of appellant's justification in relying on the other provisions is for the fact finder. Where the issue is, as it is here, the justifiability of an employee's reliance on a handbook, we must consider both the placement of the provisions in the handbook and the language of the provisions.

The statement of the Employment Relationship is not so clear and unequivocal, in terms of disclaiming an intention by virtue of the employee handbook, to create a contractual relationship different from that under which appellant was originally employed, as were the provisions found to be disclaimers in *Castiglione* and *Fournier.* Aside from characterizing the relationship as being "predicated" on an at-will basis, as distinguished from stating that it "is" an at-will employment relationship,[7] the provision is simply a

---

7. The term "predicate" is defined in the American Heritage Dictionary, Second College Edition (1982) as "[t]o base or establish"; "[t]o state or affirm as an attribute or quality of something"; "[t]o carry the connotation of; imply". Its use in the context of this case, *i.e.,* the first definition—based on—, supports an argument that the employment relationship referenced in the handbook does not foreclose changes in that relationship. *See State v. State Board of Equalization,* 93 Mont. 19, 17 P.2d 68, 73 (1932); *Evert v. Ouren,* 37 Colo.App. 402, 549 P.2d 791, 794 (App.1976), *cert. denied,* May 17, 1976.

declaration of the relationship, not an attempt to disclaim the employer's intention to limit the contractual relationship, *i.e.* to foreclose any expectation on the part of the employer. In *Castiglione,* the handbook, itself, contained a provision disclaiming that it was intended to be construed as an express or implied contract. Similarly, in *Fournier,* the provision in the employment application stated explicitly that, after the probationary period, the employee's employment could be terminated by either party, at will or upon two weeks notice.

The last paragraph of the Probationary Period provision comes closer to being a disclaimer. It is ambiguous, however, when one considers its location at the end of the Probationary Period section of the handbook. One may legitimately ask: Is it applicable only to probationary employees or is it applicable, notwithstanding its placement in that section, to all employees? Although the justifiability of appellant's reliance on other provisions in the handbook is clearly the issue, the answer to that question, though critical, is not at all clear.

Appellant maintains, and we agree, that, in any event, the facts and circumstances of this case, *i.e.* considering the employee handbook as a whole, however clearly the purported disclaimers, viewed in isolation, may define the employer-employee relationship, they are ineffective in foreclosing justifiable reliance by appellant upon other provisions in the handbook. The question before the Court, as we have already said, involves whether, by disseminating the handbook with its various provisions, the employer limited its discretion to terminate an at-will employee. With that question in mind we review the handbook.

In the prefatory remarks attributed to appellee's Board Chairman and President, an employee is advised not only that the handbook is designed to answer questions concerning the mutual expectations of the employee and employer, but that it "explains [the company's] policies and practices and how [the employee is] affected by them." There follows detailed information concerning virtually every aspect

of the employment relationship. The "Employment Relationship" is included only after the history of the company, the summary of employee benefits, and the company's policy concerning equal employment opportunity have been detailed. As we have seen, that statement is ambiguous and equivocal.

The dichotomy between probationary and non-probationary employees is explicitly and meticulously addressed in the section captioned, "Probationary Period." While the last paragraph in that section comes closest to being a disclaimer, as we have already noted, its placement in the Probationary Period section makes its effect as a disclaimer ambiguous, at best.

Thereafter, explicit provisions concerning other aspects of the employment relationship, including rules affecting employee discipline and termination, are enumerated. Some of these provisions are inconsistent with an at-will employment relationship and the manner in which they are phrased suggest a commitment, an undertaking by the employer, to act consistently with them. The section headed, "Work Rule Violations and Corresponding Disciplinary Actions," for example, defines, with clarity, "acceptable conduct of Employees" and spells out the potential for disciplinary action a violation of that standard entails. Indeed, the handbook goes so far as to include a non-exhaustive list of offenses the commission of which would constitute unacceptable employee conduct.

Under the Termination section, and, in particular, the paragraph applicable to involuntary dismissals, upon which appellant specifically relies, a procedure for handling unsatisfactory job performance is prescribed, not just mentioned. Thus, according to the handbook, persons who are not satisfactorily performing their job requirements will be counselled by a supervisor. The purpose of the counselling is to give the person an opportunity to improve, termination to result only when, after counselling, that person does not make the necessary improvement. Significantly, the section also provides: "You may be dismissed without notice or

pay in lieu of notice for violating work rules, business ethics or committing a serious act." Thus, a distinction is drawn between work rule violations and job performance lapses.

*Staggs* made clear that, to become contractual undertakings of the employer, enforceable by the employee, the provisions of a policy statement, handbook, or the like, must be "properly expressed and communicated to the employee." 61 Md.App. at 392, 486 A.2d 798. "[G]eneral statements of policy ... do not meet the contractual requirements for an offer." *Id., quoting Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626 (Minn.1983). *See also MacGill v. Blue Cross of Maryland, Inc.,* 77 Md.App. 613, 618–19, 551 A.2d 501, *cert. denied,* 315 Md. 692, 556 A.2d 673 (1989). Thus, as enunciated in *Duldulao v. Saint Mary of Nazareth Hosp. Center,* 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987), the provision must contain a promise so clear that the employee could reasonably believe an offer was made; it must be communicated or disseminated to the employee in a manner that reveals its contents and permits him or her reasonably to believe that it is an offer; and the offer inherent in the provision must be accepted, by the employee, either by commencing or continuing employment. Of course, where the document containing the provision relied upon by the employee also contains "a clear disclaimer stating that the policies and procedures described therein are 'subject to change ... unilaterally and at any time'," hence, that it is not to be interpreted as a contract of employment, it is "quite clear that the [employer] is promising nothing." *Anders v. Mobil Chemical Company,* 201 Ill.App.3d 1088, 147 Ill.Dec. 779, 782, 559 N.E.2d 1119, 1122 (Ill.App.1990).

The involuntary termination provision meets the *Staggs* test, as well as that of *Duldulao.* By its express terms, an employee who has attained regular status and who is not performing his or her job performance requirements satisfactorily, "will be counseled by [his or her] Supervisor *and* given a reasonable opportunity to improve." (Emphasis added). Moreover, the employee "may be" involuntarily

terminated only after "reasonable means of improving performance have been attempted." The delivery to appellant, at or about the time he began employment with appellee, of the handbook containing that provision, stated in mandatory terms, concerning the procedure for involuntary termination as a result of unsatisfactory job performance, could reasonably have led appellant to conclude that, notwithstanding the at-will basis of his employment relationship, the appellee had undertaken to, and, indeed, did, limit its discretion to terminate him. The issue is, at least, one for resolution by the finder of fact.

### COUNT TWO

■ Count two of the complaint alleged promises by appellee, which were not kept, to give appellant a larger raise, and payable earlier, than the one he actually received in July, 1988 and to reimburse appellant for damages sustained by his automobile on appellee's job site. It did not allege any specific consideration for these promises, although the allegations of count one were incorporated into count two.

Appellee argued below, as it does on appeal, that the court properly granted summary judgment because appellant failed to allege a "factual basis to show that there was consideration which would make the alleged promises enforceable." Appellant rejoins that "[a]ll the essential elements of the cause of action have been alleged." He maintains that the consideration for appellee's promises was his continued employment with appellee and, in the case of the vehicle repair promise, his forbearing to sue appellee. At oral argument, appellant informed us that he relied on the incorporation of count one into count two to provide a sufficient predicate from which consideration could be inferred.

We hold that the court properly granted summary judgment as to this count. As we have seen, appellant does not allege the consideration appellee received from him in re-

turn for its promises. Incorporating into the count the allegation that appellee hired appellant does not suffice. It is far from clear when the promises attributed to appellee were made or the circumstances under which they were made; hence, it can not be inferred that it was appellant's continued employment with appellee that was the consideration for them.

JUDGMENT AS TO COUNT ONE, REVERSED AND REMANDED FOR TRIAL.

JUDGMENT AS TO COUNT TWO, AFFIRMED.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.