Timothy H. **MARRS**

v.

**MARRIOTT CORPORATION, et al.**

**Civ. A. No. WN–91–1921.**

United States District Court,
D. Maryland.

Dec. 21, 1992.

Daniel M. Wemhoff, Washington, DC, for plaintiff.

Gary L. Simpler, and Shawe & Rosenthal, Baltimore, MD, for defendant Timothy Spicer.

Anna Mary Coburn, and Michael C. Ford, of Bethesda, MD, for defendants Marriott Corp., John E. Gamble and John Biemeck.

## MEMORANDUM

NICKERSON, District Judge.

■ Before the Court is Defendants' Motion for Summary Judgment (Paper No. 16). Plaintiff has filed an Opposition (Paper No. 20)[1] and Defendants have replied (Paper No. 22). Upon a review of the motion and the applicable caselaw, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion should be granted in part and denied in part.

### I. BACKGROUND

This case arises out of the termination of Plaintiff Timothy H. Marrs ["Marrs"] from his position as a security guard for Defendant Marriott Corporation ["Marriott"]. Marrs was hired by Marriott on January 15, 1982 and until the events that immediately led to his termination, consistently received positive evaluations of his job performance. Due to religious beliefs which prohibited his working on Saturdays, Marrs was generally assigned to work the night shift as an accommodation to his request to have Saturdays off.

On the morning of September 7, 1990, Defendant Timothy Spicer ["Spicer"], a security investigator for Marriott, noticed that some papers in the locked file drawer of his desk had been tampered with. After finding on September 10, 1990 that the drawer had again been opened and papers disturbed, Spicer requested and received permission to monitor the desk in question with a hidden video camera. On September 11, Spicer, along with Night Shift Supervisor Ed Capers, reviewed the video tape and observed Marrs picking the lock on the desk drawer with a paper clip and flipping through the files.

Marrs does not deny that he picked the lock on the desk. The essence of Marrs' explanation for his activities is that he was merely "practicing his lock picking skills." Because of Marrs' conduct, he was immediately placed on a three day suspension pending an investigation. After the investigation was completed, Marrs was informed that he would be terminated because of the incident. Plaintiff was given the option of resigning in lieu of termination, which he did.

On October 22, 1990 Marrs filed a charge of discrimination with the Montgomery County Human Relations Commission alleging that he was discriminated against on the basis of his religion. He was issued a right to sue letter on March 11, 1991 and on June 6, 1991 filed the instant suit in the Circuit Court of Montgomery County. The case was then removed to this Court. The Complaint contains eleven counts: Counts I and II—Abusive and Wrongful Discharge; Count III—Conspiracy; Count IV—Tortious Interference with Employment Relations; Count V—Religious Discrimination; Count VI—Invasion of Employee Privacy—Surveillance; Count VII—Breach of Implied Covenant of Good Faith Dealing; Count VIII—Defamation; Count IX—Tortious Interference with Present and Prospective Economic Advantage; Count X—Negligent Misrepresentation; and Count XI—Intentional or Negligent Infliction of Emotional Distress—Tort of Outrage.

Defendants have filed for summary judgment on all counts. In his response, it appears to the Court that Marrs only proffers opposition to that motion with regard to Counts I, II, IV and V.

1. The Court notes that confusing organization and numerous typographical errors rendered the Opposition difficult to follow in several places. Plaintiff's counsel indicated that he had experienced a "computer glitch" that resulted in the late filing of the Opposition. Perhaps that "glitch" also explains the final form in which the Opposition was filed. If that is the case, Plaintiff's counsel is instructed that the appropriate remedy would have been to request leave to file a more satisfactory copy of the pleading once the glitch was corrected.

## II. LEGAL STANDARD

◼ Summary Judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 mandates the entry of summary judgment against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Id.* at 323, 106 S.Ct. at 2553 (citations omitted).

◼ If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir.1986)). Moreover, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." *Id.*

◼ Finally, in assessing such a motion, the Court must view the evidence and all justifiable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam).

With these principles in mind, the Court will address the arguments presented by the parties.

## III. DISCUSSION

### A. Abusive and Wrongful Discharge (Counts I and II)

◼ Marrs designates the first two counts as alleging the tort of abusive and wrongful discharge. Upon examination of the allegations in those counts, it appears that Marrs is alleging a breach of an employment contract.[2]

◼ In evaluating Marrs' claim of breach of an employment contract, the Court begins with the well established rule of Maryland law that "an employment contract of indefinite duration is considered employment 'at will' which, with few exceptions, may be terminated without cause by either party at any time." *Castiglione v. Johns Hopkins Hosp.*, 69 Md.App. 325, 338, 517 A.2d 786 (citing *Page v. Carolina Coach Co.*, 667 F.2d 1156 (4th Cir.1982)), *cert. denied*, 309 Md. 325, 523 A.2d 1013 (1987); *see also, Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981). Although Marrs admits that no one at Marriott ever made him any promises regarding his continued employment, he alleges that Marriott's "Guarantee of Fair Treatment" ["GFT"], in conjunction with Marriott's "Work Rules," created an employment contract whereby Marriott could only terminate him for just cause. Marrs argues that the GFT gives rise to an exception to the employment at will doctrine, citing the

---

**2.** Marrs has presented no support for a cause of action in tort for abusive or wrongful discharge. Although Maryland now recognizes that tort, it does so only in cases where the motivation for the discharge "contravenes some clear mandate of public policy." *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981). Marrs has identified no public policy which was violated by his termination. His Title VII allegations of religious discrimination, even if supported, would not give rise to an independent tort claim. *See, Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 561 A.2d 179 (1989) ("Abusive discharge is inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy.").

Maryland Court of Special Appeals' decisions in *Staggs v. Blue Cross of Maryland,* 61 Md.App. 381, 486 A.2d 798, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985), and *Haselrig v. Public Storage, Inc.,* 86 Md.App. 116, 585 A.2d 294 (1991).

Marriott's GFT is an employee grievance procedure contained in the Corporate Policy Manual and prominently displayed throughout the workplace. It provides:

Marriott Corporation policy provides that every employee, regardless of position, be treated with respect and in a fair and just manner at all times. In keeping with Marriott's long recognized policy, all persons will be considered for employment promotion and training on the basis of qualifications without regard to race, color, creed, sex or national origin.

We recognize, that being human, mistakes may be made in spite of our best efforts. We want to correct such mistakes as soon as they happen. The only way we can do this is to know of your problems and complaints. NO MEMBER OF MANAGEMENT IS TOO BUSY TO HEAR PROBLEMS OR COMPLAINTS OF ANY EMPLOYEE.

If you have a problem or complaint, this is what you should do:

Step 1—Tell your immediate manager. During this discussion, feel free to "lay your cards on the table." Your manager will listen in a friendly, courteous manner, because it is his/her desire to understand and aid in solving problems which arise in your work. Generally, you and your manager will be able to resolve your problem.

Step 2—If you do not get your problem straightened out with your manager, see your account manager or department head. He/she will obtain all the facts and endeavor to settle your problem in a fair and equitable manner. If you still are not satisfied, he/she will arrange for you to see your district manager or general manager.

Step 3—Your district manager or general manager will confer with you, and all others involved, to carefully review the facts and circumstances. If after a thorough discussion of the matter, you still feel the problem has not been resolved to your satisfaction, the entire matter will be referred to your divisional vice president for his/her action.

Marriott Corporation Guarantee of Fair Treatment (Defendant's Exhibit 11). Marriott's "Work Rules," which are contained in the employee handbook, provide that should an employee disagree with a disciplinary action taken by the company, "the Company's complaint procedure—The Guarantee of Fair Treatment—[is] available to [that employee]." Work Rules (attachment to Plaintiff's Addenda to Opposition).

Marrs contends that the reasonableness of his reliance on the GFT as a modification of his employment at will status is a question of fact and prevents the Court from granting summary judgment on this issue. The Court disagrees that Maryland law supports such a conclusion. In *Staggs,* the Court of Special Appeals held that personnel policies "that limit the employer's discretion to terminate an indefinite employment or that set forth a required procedure for termination of such employment may, if properly expressed and communicated to the employee, become contractual undertakings by the employer that are enforceable by the employee." 61 Md. App. at 392, 486 A.2d 798. The expressed personnel policies at issue in *Staggs* consisted of provisions of detailed steps of progressive discipline that must be followed before an employee could be discharged. Specifically, the policy stated:

IV. Employees terminating due to dismissal are subject to the following conditions:

A. Except in extreme cases when dismissal will be immediate, employees will be given at least two formal counseling sessions by their supervisors and/or manager before final dismissal.... [The policy statement continues describing the specific nature of the counseling sessions.]

61 Md.App. at 384, 486 A.2d 798.

In *Haselrig,* the policy statement that the Court of Special Appeals held modified the

employee's at will status stated in pertinent part:

*Involuntary Dismissal*

If, after attaining regular status, following the successful completion of your probationary period, you are not satisfying your job performance requirements, you will be counseled by your Supervisor and given a reasonable opportunity to improve. If reasonable means of improving performance have been attempted and you still do not meet job requirements, you may be terminated involuntarily.

86 Md.App. at 119–20, 585 A.2d 294.

■ In both *Staggs* and *Haselrig*, the specific procedures outlined were clearly and expressly associated with the termination or dismissal of an employee. In contrast, nothing in Marriott's GFT refers to employee termination or dismissal. The GFT provides nothing more than an informal grievance procedure through which the employee is permitted to express his problems or complaints. Courts in Maryland, as in other jurisdictions have consistently held that the provision of a grievance procedure, standing alone, does not alter an employee's at will status. *See, Suburban Hospital v. Dwiggins,* 324 Md. 294, 596 A.2d 1069 (1991) (collecting cases holding that right to grievance procedure is not equivalent to right to continued employment).

In *Dwiggins,* the Maryland Court of Appeals cited with approval a decision of the federal district court for the District of Hawaii, *Pagdilao v. Maui Intercontinental Hotel,* 703 F.Supp. 863 (D.Hawaii 1988). This Court finds that decision instructive in resolving the instant case. In *Pagdilao,* the employer had communicated through its employee handbook its intent to follow something it called the "Kokua Procedure" in resolving employment disputes. Like the GFT, the Kokua Procedure provided a step by step process for review of employment decisions up the corporate hierarchy. The Handbook indicated that the Kokua Procedure was to be used "when an employee is unhappy due to his/her terms and conditions of employment, the interpretation or application of a company policy or house rule, or any action of management and supervisory

personnel affecting an employee's employment status." *Id.* at 867. The "house rules," like Marriott's "Work Rules," proscribed the conduct that could result in disciplinary action or termination.

The employee in *Pagdilao* argued that the Kokua Procedure when read in conjunction with the House Rules established an implied contract that disciplinary action or termination could result for specific violations of House Rules or for cause, only after the Kokua Procedure had been followed. Assuming *arguendo* that such an implied contract was formed and finding that the employee was provided the opportunity to discuss his termination with his supervisors, the court concluded:

The court thus finds that plaintiff was given all that was promised to him in the Employee Handbook.... The only promise to employees is that they will be permitted to pursue the Kokua Procedure. Plaintiff admits that he was afforded this opportunity. Thus, there is no issue of fact with respect to plaintiff's claim for breach of implied contract, and accordingly, defendant's motion for summary judgment on that claim is granted.

703 F.Supp. at 867.

■ In the instant case, Marrs testified in his deposition that after learning of his termination, he contacted Dick Carver, a representative of Marriott's Employee Relations Department. Carver gave Marrs an opportunity to present information to support his complaint, he reviewed the matter and informed Marrs that breaking into the desk constituted solid grounds for termination. Marrs does not allege that he attempted to proceed any further with the grievance procedure or that employees of Marriott precluded him from making any such attempt.

The Court finds that GFT and the Work Rules did not give Marrs a right to continued employment: Marrs' at will status had not been contractually modified by Marriott. Any contractual obligation that these policies may have bestowed on Marrs were either discharged by Carver's meeting with Marrs

or excused by Marrs' failure to initiate further procedures.[3]

■ Because the Court concludes that Marrs' position with Marriott was terminable at will, Marrs' claim of breach of the implied covenant of good faith and fair dealing (Count VII) must also fail. Under Maryland law, "[t]he concept of implied covenant of fair dealing and good faith had been rejected in contracts of employment at will." *Butler v. Westinghouse Elec. Corp.*, 690 F.Supp. 424, 429 (D.Md.1987). *See also, Chekey v. BTR Realty, Inc.*, 575 F.Supp. 715, 717 n. 2 (D.Md. 1983). In addition, as the Court finds that Marrs was provided all that Marriott had contractually obligated itself to provide, Marrs' negligent misrepresentation claims (Count X) must also fail.

### B. Religious Discrimination (Count V)

Marrs asserts that Marriott discriminated against him because of his religious beliefs that prevented him from working on Saturdays. He avers in his complaint that throughout his tenure at Marriott he experienced overt and subtle pressure to work Saturdays and because he did not, he was denied pay raises and promotions. The gravamen of this count, however, is that he was discharged from his position due to his religious beliefs and the "lock-picking" episode was a mere pretext for his dismissal.

■ In order to establish a prima facia case for a Title VII employment discrimination claim, the plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the job and satisfied his employer's expectations; (3) he was dismissed despite his satisfactory performance;

and (4) after his dismissal, the job remained open and the employer sought applicants for it. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Gairola v. Commonwealth of Virginia Dept. of General Services*, 753 F.2d 1281, 1286 (4th Cir.1985). The plaintiff must show that the defendant acted with discriminatory motive or treated him less favorably than others because of his membership in the protected class. *Wright v. National Archives and Records Service*, 609 F.2d 702, 713 (4th Cir.1979). The burden of production then shifts to the defendant to show that it fired the plaintiff for a legitimate, nondiscriminatory reason.[4] The Plaintiff then has an opportunity to prove by a preponderance of the evidence that the reasons offered by the defendant are only a pretext for discrimination. *Id.* In addition, in religious accommodation cases such as this, the court must determine whether the employer met its obligation to reasonably accommodate the individual's religious practices. 29 C.F.R. § 1605; *Trans World Airways, Inc. v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977).

■ In the instant case, Marrs has conceded that Marriott had always accommodated his requests to have Saturdays off. Marrs Deposition at 172 (Defendants' Exhibit 16). Based on his positive performance review, Marrs received wage increases. He was making $9.13 per hour at the time of his termination. Affidavit of John Gamble at 1, 4 (Defendant's Exhibit 3). Marrs has presented no evidence whatsoever of disparate or discriminatory treatment during the course of his employment.

3. Defendants also argue that Plaintiff's argument must fail due to an expressed disclaimer contained on the introductory page of its employee handbook. That disclaimer states:

The contents of this manual are presented as a matter of information only and are not intended to create, nor are they to be construed to constitute, a contract, express or implied, between the Marriott Corporation and any of its employees.

Introduction Page or Marriott's Corporate Policy Manual (Defendant's Exhibit 14).

Maryland courts have recognized that, "an employer may avoid contractual liability by any terms which clearly and conspicuously disclaim

contractual intent." *Castiglione*, 69 Md.App. at 340, 517 A.2d 786; *but see, Haselrig*, 86 Md.App. at 127–28, 585 A.2d 294 ("clarity with which a provision in the employee handbook disclaims contractual intent will determine the viability of an employee's claim that he or she justifiably relied on the provisions in that handbook"). Because the Court finds the Plaintiff's contract claim fails on other grounds, it need not reach the issue of the effectiveness of this disclaimer.

4. The burden of persuasion, however, always remains on the Plaintiff. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

Regarding his discharge, Marrs has offered no evidence that Marriott treated him any differently than any other employee caught in an act of misconduct. Even had Marrs met his burden of presenting a prima facia case, the Court finds that catching an employee breaking into a desk is a legitimate, nondiscriminatory ground for discharging that employee. Marrs' bald assertion that the lock-picking was a pretext for his termination, without more, is not sufficient to survive the summary judgment motion. *See, Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985) ("Unsupported allegations as to motive do not confer talismanic immunity from Rule 56."); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (the summary judgment rule would be rendered sterile if mere incantation of intent would suffice to defeat the motion).

### C. Tortious Interference with Employment Relationship (Count IV)

Marrs alleges that Defendant Spicer intentionally interfered with his longstanding employment relationship with Marriott.[5] According to Marrs, Spicer purposely engineered the incident with the desk in order to get rid of Marrs. Marrs believes that Spicer sought to retaliate against him because Marrs had implicated Spicer in the theft of some property from Marriott. This allegation is supported by the declaration of a co-worker of Marrs, Janice Green–Weiss: "I know that Tim Marrs and Tim Spicer were at odds with each other because Tim Marrs was looking into the fact that Mr. Spicer may have been involved in gas siphoning in the Marriott lot." Green–Weiss Declaration at 1 (Plaintiff's Exhibit 2).

 To successfully plead a claim for tortious interference with employment expectations, the plaintiff must point to a third party, who without legal justification, intentionally interfered with the relationship between an employer and its employee. *Continental*

*Casualty Co. v. Mirabile*, 52 Md.App. 387, 402, 449 A.2d 1176 (1982). Defendants assert that this claim must fail because Spicer was an agent of Marriott acting within the scope of that agency. Therefore, he could not be considered a third party to the Marrs/Marriott relationship.

 The court agrees that the investigation and discipline of employee misconduct are within the scope of a supervisor's responsibilities and that no liability can lie for these activities under this cause of action. If, however, Marrs can prove that Spicer, motivated by personal revenge, maliciously "entrapped" Marrs into seeming misconduct in order to have him fired, those actions would not be within the scope of Spicer's duties. Although no Maryland decision was found directly addressing the issue of whether a person in a supervisory position can be liable for intentional interference with an employment relationship, several other jurisdictions have concluded that there can be liability. *See, Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 291 (D.C.App. 1989) ("a person who maliciously procures a discharge of another by their common employer is not shielded from liability by his or her status as a supervisory employee."); *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025, 1041–44 (1985); *Trimble v. City & County of Denver*, 697 P.2d 716, 726 (Colo.1985) ("even an agent can be liable for improper interference with the principal's contractual relations.... If the actor is motivated solely by a desire to harm one of the contractual parties or to interfere in the contractual relations between those parties, the interference is certainly improper."). Furthermore, this conclusion is consistent with general principles of Maryland law of agency. *See, Ennis v. Crenca*, 322 Md. 285, 587 A.2d 485 (1991) ("where employee's actions are personal, or where employee is acting to further his own interests, the conduct is normally outside the

---

5. In his complaint, Marrs alleged that all three defendant supervisors—Spicer, John E. Gamble and John Biemeck—as well as other unnamed employees, acted in concert to accomplish his termination. In his Opposition and supporting affidavits, this allegation is leveled only at Defendant Spicer. *See,* Opposition at 27 ("If the sequence of events unfolded in this manner, *Spicer* may properly be held to have maliciously procured the discharge of Marrs....") (emphasis added).

scope of employment"); *Sawyer v. Humphries*, 322 Md. 247, 587 A.2d 467 (1991) ("particularly in cases involving intentional torts committed by an employee, [the Maryland Court of Appeals] has emphasized that where an employees's actions are personàl, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment."). Although Marrs' evidence supporting this claim is sparse, the Court finds he has raised a material issue of fact, rendering summary judgment inappropriate.[6]

### D. Remaining claims

Summary judgement will be granted for the remaining counts in that Marrs has failed to raise a material issue of fact with regard to at least one element of each claim. Marrs has not directly responded to Defendants' motion regarding these counts.

■ In Count III, Marrs alleges that the three Defendant supervisors and "other unknown parties" conspired among themselves to terminate his employment. Marrs' allegations are insufficient, however, because he has failed to proffer any evidence of involvement in the scheme on the part of anyone except Spicer. To state a claim of civil conspiracy, Marrs must present evidence of an agreement or combination of two or more actors. *See, Allen v. Bethlehem Steel Corp.*,

76 Md.App. 642, 547 A.2d 1105, *cert. denied sub nom., Green & Vernon Green Associates v. Allen*, 314 Md. 458, 550 A.2d 1168 (1988); *Kairys v. Douglas Stereo*, 83 Md.App. 667, 577 A.2d 386, 393 (1990). He has failed to do so.

■ Marrs asserts in Count VI that Defendants' videotaping of his activities on the night in question constitutes an invasion of his privacy. Although Marrs has not specified which branch of the tort of invasion of privacy he is alleging, it is assumed that he is alleging an intrusion upon his seclusion. To prove such an invasion, Marrs is required to show that the employer intentionally intruded upon his solicitude, seclusion or private affairs in a manner that would be highly offensive to a reasonable person. *Pemberton v. Bethlehem Steel Corp.*, 66 Md.App. 133, 163, 502 A.2d 1101 ("If conducted in a reasonable and non-obtrusive manner, [surveillance] is not actionable."), *cert. denied*, 306 Md. 289, 508 A.2d 488, *and cert. denied*, 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 575 (1986). The Court finds no support for the conclusion that Marrs had a reasonable expectation of privacy in an open office. In fact, Plaintiff admits that the area "was a common area that all of [the security guards] had access to." Affidavit of Marrs at 1 (Plaintiff's Exhibit 1). *See generally*, Stanley Mazaroff, *Maryland Employment Law*, § 5.4(B)(1) ("this type of invasion of privacy [, i.e., surveillance,] generally is inapplicable to most areas of the workplace because there

---

6. The court's finding that Marriott did not breach a contractual obligation to Marrs, does not preclude the possibility that Spicer interfered with the Marrs/Marriott relationship. In the landmark decision recognizing the tort of intentional interference with an employment relationship, *Lucke v. Clothing Cutters and Trimmers Assembly*, 77 Md. 396, 26 A. 505 (1893), the plaintiff was an at-will employee. Nonetheless, the Maryland Court of Appeals held:

> [I]t is apparent that neither the fact that the term of service interrupted is not for a fixed period, nor the fact that there is not a right of action against the person who is induced or influenced to terminate the service or to refuse to perform the agreement, is of itself not a bar to an action against the third person maliciously and wantonly procuring the termination of, or a refusal to perform the agreement. It is the legal right of the party to such an agree-

ment to terminate or refuse to perform it, and in doing so he violates no right of the other party to it; but so long as the former is willing and ready to perform it, it is not the legal right, but is a wrong on the part of a third party maliciously and wantonly to procure the former to terminate or refuse to perform it. Such wanton and malicious interference for the mere purpose of injuring another, is not the exercise of a legal right. Such other person who is in employment by which he is earning a living, or otherwise enjoying the fruits and advantages of his industry, or enterprise or skill, has a right to pursue such employment undisturbed by mere malicious or wanton interference or annoyance.

77 Md. at 409–10, 26 A. 505. *See also, McCarter v. Baltimore Chamber of Commerce*, 126 Md. 131, 94 A. 541 (1915).

can be no liability for observing an employee at work since he is then not in seclusion").

The claims in Count VIII—Defamation and Count IX—Tortious Interference with Present and Prospective Economic Advantage are based on statements allegedly made by Defendant supervisors to Marrs' prospective employers after his discharge and on statements made by Defendant Gamble to the Maryland Unemployment Commission. Regarding statements made to prospective employers, Marrs has been unable to identify any specific statement made by any Defendant to any potential employer. When asked the basis of his allegation, Marrs responded that it was based on a "feeling" he had because of the "consistent refusal for jobs." Marrs Deposition at 273. As to Gamble's testimony before the unemployment commission, Marrs has not shown that Gamble had the requisite malice or reckless disregard for truthfulness to overcome the qualified privilege for statements made in the context of a judicial or administrative proceeding. *See, Pratt v. Delta Air Lines, Inc.,* 675 F.Supp. 991, 997 (D.Md.1987).

 Finally, Marrs' claim of intentional infliction of emotional distress (Count XI) must also fail.[7] While recognizing this tort, Maryland has limited its application to conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community: liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Moniodis v. Cook,* 64 Md.App. 1, 17, 494 A.2d 212, *cert. denied,* 304 Md. 631, 500 A.2d 649 (1985). Furthermore, the emotional response suffered must be so severely disabling and acute, that "no reasonable man could be expected to endure it." *Id.* (quoting *Harris v. Jones,* 281 Md. 560, 571, 380 A.2d 611 (1977)). Marrs has failed to allege either sufficiently egregious conduct or serious injury to support this claim. *See, Leese v. Baltimore County,* 64 Md.App. 442, 497 A.2d 159 (plaintiff's admission that he was able to tend

to necessary everyday matters and engage in active job hunting held inconsistent with allegations of severe emotional distress), *cert. denied,* 305 Md. 106, 501 A.2d 845 (1985).

For all the above stated reasons, Defendants' Motion for Summary Judgment will be granted for all counts with the exception of Count IV as that count relates to Defendant Spicer. A separate order will issue.

### ORDER

In accordance with the foregoing Memorandum and for the reasons stated therein, IT IS this 21st day of December, 1992, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion for Summary Judgment filed August 3, 1992 (Paper No. 16) is GRANTED in part and DENIED in part; that Defendants' motion is DENIED with respect to Count IV—Tortious Interference with Employment Relations in as much as that count relates to Defendant Timothy Spicer; that Defendant's motion is GRANTED in all other respects.

---

7. In the alternative, Marrs also asserted in this count, a claim for negligent infliction of emotional distress. Maryland does not recognize this tort. *Hamilton v. Ford Motor Credit Company,* 66 Md.App. 46, 502 A.2d 1057, *cert. denied,* 306 Md. 118, 507 A.2d 631 (1986).