Daniel S. ORCI, Jr., Plaintiff,

v.

INSITUFORM EAST, INC.,
et al. Defendants.

Civ. A. No. AW 94–1617.

United States District Court,
D. Maryland,
Southern Division.

Sept. 28, 1995.

Raymond Dennis Carignan, Law Office, Washington, DC, for plaintiff.

Richard T. Sampson, Semmes, Bowen and Semmes, Baltimore, MD, Steven R. Becker, Vorys, Sate, Seymour & Pease, Washington, DC, for defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Daniel S. Orci, Jr. ("Orci") filed this action against his former employer, Insituform East, Inc. ("Insituform" or "Company") and Robert and George Erikson. Orci alleges wrongful, abusive, retaliatory discharge, breach of employment contract and tortious interference in beneficial employment relations. Pending before the Court is Insituform's motion to dismiss or, in the alternative, for summary judgment. The parties have fully briefed the issues such that oral argument would not assist the Court in its decision. Local Rule 105.6 (D.Md.1994).

■ When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the complaint's allegations as true and liberally construe the complaint as a whole. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *Finlator v. Powers*, 902 F.2d 1158 (4th Cir.1990). A court should not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Faulkner Advertising Assoc. v. Nissan Motor Corp.*, 905 F.2d 769, 771–71 (4th Cir.1990). If a motion to dismiss is supported by matters outside the pleading which the Court does not exclude, the motion shall be treated as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(1), (2) and (6).

■ Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The moving party bears the burden of demonstrating that there are no factual issues worthy of trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party must demonstrate that genuine factual issues exists which require trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the mere existence of a scintilla of evidence will not defeat a summary judgment motion. *Id.* at 587, 106 S.Ct. at 1356.

## FACTUAL BACKGROUND

■ In making the summary judgment determination, the Court will construe all facts and reasonable inferences drawn therefrom in a light most favorable to the nonmoving party, Orci. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. Insituform is a publicly traded company incorporated, organized and existing under the laws of Delaware. It currently does and, at all relevant times did, business in the State of Maryland. Orci began working for Insituform on July 18, 1988. Shortly thereafter he was elected as a corporate officer with the title "Corporate Secretary and Assistant General Counsel." Orci's employment with Insituform comprised his acting and functioning, *inter alia*, as Director of Administration in an administrative and executive capacity. As such he acted as the administrator of the company's ERISA plan. He did not, however, act as an attorney for Insituform.

Defendant Robert W. Erikson, as Insituform's chairman, is an officer, employee and member of the Board of Directors. Defendant George W. Erikson, as Insituform's president, is also an officer, employee and a member of the Board of Directors of Insituform.

By letter dated May 22, 1991, George Erikson, as chairman of The Chief Executive Officer Committee, notified Orci that:

> You were personally notified by the Chief Executive Officer Committee (CEOC) at approximately 9:30 a.m., this date, that you have been suspended, without pay, from all duties as an officer and supervisory employee of the corporation and its subsidiaries, partnerships or affiliates effective immediately. You were instructed to return immediately to the corporation all property, records, keys and items of every kind belonging to the corporation, and remove all items of personal ownership from the Company. You are not to return to Company premises absent authority from the CEOC.
>
> As you know, the CEOC had earlier extended to you as a courtesy the opportunity to consider and effect a resignation (which you determined to decline), and the CEOC had intended to recommend the extension to you of the courtesy to be placed on administrative leave (with pay) through the period ending 30 June 1991, subject to your consultation availability during such period (which you were considering). However, your refusal to discuss the incredulous fact assertions you have now made under your letter (by counsel) dated 17 May 1991 has removed the CEOC's confidence in your reliability, judgment and conduct as an officer and employee of the firm. Your immediate suspension, therefore, has been effected. As discussed throughout this month, the CEOC's earlier consideration to recommend to the Board your termination effective 30 June 1991 was and had been based upon unsatisfactory attitude and performance not related to our instant letter of 17 May and its subsequent requirement for your immediate suspension. The CEOC will review it recommendations regarding your final termination.

Thus, from 22 May 1991 forward, Orci performed no work for Insituform and Insituform prohibited him from coming on the Company's premises except to retrieve his personal belongings.

According to Orci, the Eriksons sought his termination in retaliation to Orci's advancement of an affirmative action plan and recommendations for elevating more women and minorities into higher positions in Insituform. Orci further alleges that the Eriksons sought his termination because he refused to violate federal and public policy under the Employee Retirement Income Security Act ("ERISA"). Specifically, Orci refused to allow coverage for a teenager who was visiting with one of the Company's officers because the teenager was not the officer's child or his wife's child. Orci felt that allowing coverage might be perceived as discriminating in favor of highly paid officers and against lower paid employees. The Eriksons continued to press Orci to allow the coverage but Orci refused. Shortly thereafter Orci was suspended.

> In a letter dated June 14, 1991, Orci wrote: I have still not received a written statement of particulars as to the reasons justifying my suspension or termination, and am, per the actions of you and Robert Erikson, not being afforded a proper hearing before the only body that can consider an officer's termination ... Lest the Board function as a "rubber stamp" for a wrongful and improper termination ... I shall submit my defense ... in writing to the Board members in anticipation of their individual full consideration of both sides early next week.

By letter dated 21 June 1991, Robert W. Erikson informed Orci that the Board of Directors affirmed the CEOC's recommendation that Orci be terminated from employment at Insituform effective 22 May 1991.

On June 13, 1994, Orci filed the instant civil action against Insituform East, Inc., Robert Erikson and George Erikson. He invoked the Court's jurisdiction under 28 U.S.C. § 1332(a)(4). In his complaint, Orci alleges (1) wrongful, abusive and retaliatory discharge; (2) breach of employment contract; (3) failure to pay bonus-request and an accounting-recovery of pro-rata share; and, (4) tortious interference with beneficial employment relations. The parties subsequently conducted discovery, during which Orci testified that he knew Insituform was going to terminate him as early as 3 May 1991.

## DISCUSSION

Having completed discovery, Defendants argue for a dismissal or, in the alternative, summary judgment because (1) the statute of limitations has expired; (2) Orci's complaint for wrongful discharge is pre-empted by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (3) ERISA, 29 U.S.C. § 1001 *et seq.* pre-empts Orci's complaint for wrongful discharge; (4) Orci cannot state a claim for abusive discharge because no one at Insituform ever instructed him to violate the law or to refrain from performing a statutorily prescribed duty; (5) Orci cannot state a claim for breach of contract because he was an at-will employee; and (6) Orci fails to make any allegations which would support a suit against Robert George Erikson personally.

In support of the various arguments and opposition thereto, the parties have attached various exhibits. The Court has considered the exhibits in reaching the decision which follows and will, therefore, treat Defendants' motion as one for summary judgment. Fed. R.Civ.P. 12(b)(6). The Court will address each of Defendants' arguments for summary judgment in turn, with the exception of the statute of limitations argument. The Court will address Defendants' statute of limitations argument last, as it requires the Court to characterize Orci's legal claims.

### Title VII Pre-emption/Abusive Discharge

Orci claims that "Defendants discharged or caused [him] to be discharged from his employment with INSITUFORM in countervention [sic] of the clear mandate of State and public policy against discrimination based on race, color, religion, sex, or national origin." Paper No. 1, ¶ 20. Orci claims he attempted to develop an affirmative action plan which would elevate more women and minorities into higher positions in Insituform and that Defendants objected to the plan and retaliated by discharging him.[1]

Defendants urge that Orci's claim that Defendants retaliated against him because of his proposed affirmative action plan is pre-empted by Title VII. Orci counters that nothing in his complaint addresses any Title VII issues directly and, thus, his claims do not fall under Title VII. The Court disagrees.

■ To establish a claim for abusive or wrongful discharge, Orci must show that Insituform fired him "in contravention of some clear mandate of the public policy of Maryland, for refusal 'to act in an unlawful manner or [because the employee] attempted to perform a statutorily prescribed duty.'" *Chappell v. Southern Maryland Hospital, Inc.*, 320 Md. 483, 578 A.2d 766 (1990) (quoting *Adler v. American Standard Corp.*, 291 Md. 31, 47, 432 A.2d 464 (1981). Moreover, Orci must show that the alleged tort is not "expressed in a statute which carries its own remedy for vindicating that public policy." *Id.*, 320 Md. at 490, 578 A.2d 766 (citing *Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 609, 561 A.2d 179 (1989).

In *Chappell*, the Court of Appeals of Maryland addressed a similar issue. *Id.* There, the plaintiff claimed that his employer fired him because he insisted that it "cease its policy of discriminating against Blacks in its hiring" and that "the [employer] fully investigate and cease the sexual harassment situation which existed toward female employees." *Id.*, 320 Md. at 487, 578 A.2d 766. The Maryland court concluded that the plaintiff did not have a claim for wrongful discharge because he had an adequate remedy under Title VII. The *Chappell* court reasoned:

[t]he opposition and participation clauses of § 2000e–3(a) have been liberally applied by the courts to shield employees who speak out against an employer's unlawful employment practices, the obvious rationale being that without some guaranteed protection to assert equal employment rights, the ultimate purpose of the act would be severely limited.

While Orci did reference race during his deposition, the Court is satisfied that Orci's claims are as set forth in his complaint: that Insituform terminated him because of his advancement of an affirmative action plan.

---

1. Defendants contend that Orci's claims are based on Orci's allegations that he began to experience problems once he informed the Eriksons that he considered himself to be of hispanic dissent. Orci objects to any characterization by Defendants that his claims are racially based.

*Id.,* 320 Md. at 494, 578 A.2d 766 (citations omitted).

▆▆▆ The Court is not convinced that because Orci did not make any direct claims under Title VII he has a claim for abusive discharge. As the *Chappell* court held, where the plaintiff complains of employment discrimination based on race, color, religion, sex, or national origin, Title VII provides an adequate remedy. Such is the case even when, as here, the plaintiff's claims are based on his attempts to ensure equal employment on behalf of others.

The Court does not hold that Title VII pre-empts Orci's claims of abusive or wrongful discharge. Rather, the Court holds that because Title VII provides its own remedy for the type of behavior of which Orci complains, no claim for abusive discharge can lie. *Chappell,* 320 Md. at 490, 578 A.2d 766.

*ERISA Pre-emption/Abusive Discharge*

▆▆▆ Orci further contends that "Defendants discharged or caused [him] to be discharged from his employment with INSITUFORM in countervention [sic] of the clear mandate of State and public policy against discrimination in employee benefits under ERISA." Paper No. 1., ¶ 20. According to Orci, Defendants' actions amounted to wrongful, abusive and retaliatory discharge. Defendants urge that ERISA pre-empts this claim.

As stated by the Supreme Court

ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans. As part of this closely integrated regulatory system Congress included various safeguards to preclude abuse and to completely secure the rights and expectations brought into being by this landmark reform legislation. Prominent among these safeguards are three provisions ....: § 514(a), 29 U.S.C. § 1144(a), ERISA's broad pre-emption provision; § 510, 29

U.S.C. § 1140, which proscribes interference with rights protected by ERISA; and § 502(a), 29 U.S.C. § 1132(a), a carefully integrated civil enforcement scheme that is one of the essential tools for accomplishing the stated purposes of ERISA.

*Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). The Court described the expansive breadth of ERISA's pre-emption clause as it relates to state law. "If a state law relates to employee benefit plans, it is pre-empted." *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (citing § 514(a)). Under § 514(c) "State law includes all laws", whether they be in the form of "decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). Moreover, "[a] law is related to an employee benefit plan ... if it has a connection with or reference to such a plan." *McClendon,* 498 U.S. at 139, 111 S.Ct. at 483 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983)) (internal quotation marks omitted). Thus, "a state law may relate to a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Id.* (citing *Pilot Life Ins. Co.,* 481 U.S. at 47, 107 S.Ct. at 1552–53).

▆▆▆ ERISA provides a remedy for Orci's claim that Defendants discharged him or had him discharged from Insituform because he refused to violate an ERISA regulation. There is no dispute that the plan to which Orci refers was subject to ERISA's regulations. Moreover, in his capacity as administrator of that plan, Orci was a fiduciary and became "subject to ERISA's fiduciary duties." *See Authier v. Ginsberg,* 757 F.2d 796, 798 (6th Cir.1985).

Orci urges that ERISA does not provide a remedy and, thus, his only recourse is under the common law cause of action of abusive discharge. At least one court has held that 29 U.S.C. § 1140 "creates a claim for retaliatory action by the employer similar to that under the civil rights laws." *Crouch v. Mo-Kan Iron Workers Welfare Fund,* 740 F.2d 805, 810 (10th Cir.1984) (citing *Kross v. West-*

*ern Electric Co.,* 701 F.2d 1238 (7th Cir. 1983)). Thus, even assuming that no such remedy exists under ERISA, the expansive breadth of ERISA's pre-emption clause would pre-empt any claims that Orci would have for abusive discharge as they relate to his administration of the plan.

The very essence of Orci's complaint is that he was terminated because he refused to include someone under the plan in violation of ERISA's regulations. The Court is

> not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan. Nor is the cost of defending this lawsuit a mere administrative burden. Here, the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law. As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension plan itself.

*McClendon,* 498 U.S. at 139–40, 111 S.Ct. at 483–84; *see also Anderson v. Electronic Data Systems Corp.,* 11 F.3d 1311, 1314 (5th Cir.1994) (claims by fiduciary that he was demoted and discharged for refusing to commit illegal acts were pre-empted by ERISA). Since, Orci's claim falls under ERISA, an amendment of his complaint would be futile. *See Makar v. Health Care Corp. of Mid–Atlantic,* 872 F.2d 80, 82 (4th Cir.1989) (exhaustion of administrative remedies is generally a prerequisite to commencing an ERISA action).

### Breach of Contract

■ By the clear terms of Insituform's by-laws governing Orci's employment, he was an at-will employee. The by-laws provide that "[a]ny officer elected or appointed by the Board of Directors may be removed at any time by an affirmative vote of a majority of the Board of Directors. Paper No. 14, exh. 1, p. 6, § 5. As such, there was no contract for the Defendants to breach. Orci's claims that the Eriksons made oral representations regarding his future employment with Insituform do not defeat the clear terms of the written by-laws.

### Claims Against the Eriksons as Individuals

Orci alleges that the Eriksons

> maliciously, in their individual capacities and without lawful justification or privilege induced defendant corporation to breach its contract with [him] and otherwise caused [his] involuntary termination through their malicious interference in his advantageous and beneficial employment relations with Insituform.

Paper No. 1, ¶ 31. Despite the parties having conducted and completed discovery, Orci has not set forth any factual dispute regarding the claim that the Eriksons did not act within the scope of their employment. *See Marrs v. Marriott Corporation,* 830 F.Supp. 274, 283 (D.Md.1992); *Continental Casualty Co. v. Mirabile,* 52 Md.App. 387, 449 A.2d 1176, 1185 (1982) *cert. denied,* 295 Md. 651 (1982). Orci claims that the Eriksons made misrepresentations to the Board of Directors concerning his performance, yet he fails to support his allegations. Accordingly, the Court will grant summary judgment with regard to this claim.

### Failure to Pay Annual Bonus

■ Orci argues that Insituform failed to pay him his annual bonus for the 1991 fiscal year (July 1, 1990 through June 30, 1991). He, therefore, requests an accounting to determine the amount due to him. Neither party briefed this issue, however, based upon one of the exhibits the Court determines that Orci is not entitled to an annual bonus.

In a letter dated 21 June 1991, Robert Erikson explained:

> The Board is permitting the CEOC to reextend to you the actual benefits, and such public perception advantages as may accrue, attendant to a voluntary resignation effective as of the close of business 30 June 1991. If an acceptable voluntary written resignation is received from you, we will place you on paid administrative leave from 22 May through 30 June 1991 and you can remain eligible for participation both in the fiscal year 1991 profit-sharing contribution and in the officer's fiscal year bonus pool as normally based upon the company's return on investment for the year ("ROI" bonus). You would

remain, of course, relieved of all active authority to act in behalf of the corporation during this period.

Paper No. 14, exh. 9. This letter makes clear that the bonus came with certain stipulations. From the letter, the Court ascertains that terminated employees became ineligible for the bonus payment. Moreover, the letter indicates that Insituform had previously extended the offer to pay Orci "actual benefits". The letter clearly refers back to a communication from the CEOC to Orci dated 22 May 1991. No factual dispute exist regarding Orci's eligibility for the bonus. Accordingly, the Court will grant Defendants' motion for summary judgment regarding this claim. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*Statute of Limitations*

Having determined that Orci's claims more properly arise under Title VII and ERISA, the Court will now address Defendants' statute of limitations argument. Orci concedes that the statute of limitations governing this matter is three years.[2] However, Orci argues that the date when the Company officially notified him of his termination is the date when the statute of limitations commenced to run. Since he did not receive official notice until some time after 21 June 1991, he urges that this action is timely.[3] Insituform counters that the controlling date is the date when Orci actually knew that the company was going to terminate his employment. Both parties rely on two Supreme Court decisions. *See Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

In determining when the limitations period commences to run in an employment discrimination case, the Supreme Court reasoned that "the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Ricks*, 449 U.S. at 258, 101

S.Ct. at 504 (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979)). The Court held that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257. Under *Ricks*, courts must first determine the alleged discriminatory act of which plaintiff complains.

▇▇▇ Here, the Court has determined that Orci's claims fall under Title VII and ERISA. Even assuming, *arguendo*, that the proper date for the cause of action is 21 June 1990, Orci's Title VII claims would fail because of the administrative procedures required under Title VII. Moreover, by Orci's own admission, he knew in early May that he was going to be terminated. Thus, approval by the Board of Directors became a mere formality. The approval was simply "the time at which the consequences of the [alleged discriminatory] acts became most painful". *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504. Orci's decision to sit in neutral so that he could realize the full extent of his damages instead of timely filing his claim precludes him from now bringing this action.

### CONCLUSION

For the reasons set forth more fully above, the Court will grant Defendants' motion for summary judgment. It will be so ordered.

### ORDER

For the reasons set forth in the attached Memorandum Opinion, IT IS this *28* th day of September, 1995, by the United States District Court for the District of Maryland, Southern Division, hereby **ORDERED:**

1. That Defendants' Motion to Dismiss, which the Court has treated as a Motion for Summary Judgment, BE, and the same hereby IS, **GRANTED;**

2. That the Clerk of the Court CLOSE this case;

---

**2.** *See* Md.Courts & Jud.Proc.Code, § 5–101.

**3.** Orci also posits that by Order filed 18 July 1994, the Court denied Insituform's motion to dismiss based on the statute of limitations. The

Court did deny Insituform's motion to dismiss but only as it related to Insituform's claims that Orci had not adequately alleged diversity of citizenship.

3. That the Clerk of the Court mail a copy of this Order to all parties of record.