**Nancy L. YOUNG, Plaintiff,**

v.

**SHEETZ, INC., et al., Defendants.**

**No. CIV. A. 96–0016–H.**

United States District Court,
W.D. Virginia,
Harrisburg Division.

Nov. 21, 1997.

**MEMORANDUM OPINION**

MICHAEL, Senior District Judge.

### I. Background

Plaintiff Nancy Young is employed as a clerk at defendant Sheetz, Inc. and Fox Mountain, Inc.'s store. Plaintiff was supervised by defendant Rinker, who in turn was supervised by defendant Campbell, the district manager. Plaintiff makes a host of allegations against the individual defendants, including that (1) she was repeatedly the recipient of unwelcome physical touching by defendants Rinker and Campbell; (2) Campbell suggested that he could be her "honey;" (3) Rinker would stand by the pornographic magazine rack, stimulate himself, go into the men's room and masturbate, before forcing

plaintiff to clean up the mess; (4) defendants would make inappropriate comments about plaintiff's physical appearance; (5) Rinker would force plaintiff to rewrap pornographic magazines that he had opened and would make comments about the magazines; (6) Rinker would comment on the physical appearance of women customers; and (7) Rinker would look at pornographic magazines and "take great pride in displaying his erection as he paraded about the store." Despite plaintiff's protests, these incidents continued.

On September 28, 1995, plaintiff filed an EEOC charge and received a Right to Sue letter. Plaintiff brought suit in this court alleging: *quid pro quo* sexual harassment (Count I), hostile work environment created by sexual harassment (Count II), Assault and Battery (Count III), Breach of Contract (Count IV), and Intentional Infliction of Emotional Distress (Count V). Pursuant to a hearing regarding defendants' motions to dismiss, this court dismissed plaintiff's Title VII and breach of contract claims as asserted against defendants Rinker and Campbell. Defendants Rinker, Sheetz, Fox Mountain, and Campbell then filed motions for summary judgment. Defendant Rinker in his separate motion for summary judgment argues that the court should grant him summary judgment on Counts III (Assault and Battery) and V (Intentional Infliction of Emotional Distress).[1] Defendants Sheetz and Fox Mountain argue that the court should grant them summary judgment because: (1) plaintiff's *quid pro quo* claim fails because plaintiff cannot show a "bargained-for exchange," (2) her hostile work environment claim fails because the misconduct of

Rinker could not be imputed to Campbell, Sheetz, or Fox Mountain, (3) plaintiff's breach of contract claim fails because she does not offer any evidence of the elements of a contract; and (4) plaintiff's intentional infliction of emotional distress claim fails because Campbell's acts were not outrageous, plaintiff's distress was not severe, and the companies cannot be liable for the personal acts of their supervisors.

Magistrate Judge Crigler conducted a hearing on the motions on July 24, 1997 and issued a Report and Recommendation on August 21, 1997. This court has carefully considered the Report and Recommendation, the oral arguments of the parties before this court on October 10, 1997, and the numerous pleadings in this case.[2] The court now denies Defendants' October 24, 1997 motion to dismiss plaintiff's complaint for untimeliness. As to the objections to the Report and Recommendation of the magistrate judge, this court sustains the objections of the defendants in part and overrules them in part. The court adopts the magistrate judge's recommendation to deny the motion to dismiss as to the Assault and Battery claim (Count III) against defendant Rinker and Campbell, the Intentional Infliction of Emotional Distress Claim (Count V) against all defendants, and the hostile work environment claim (Count II) against defendants Sheetz and Fox Mountain. The court further adopts the recommendation of the magistrate judge to grant the motion to dismiss as to the Breach of Contract claim (Count IV) against Sheetz and Fox Mountain. The court rejects the recommendation of the magistrate judge and grants the motion to dismiss the *quid pro*

---

1. Plaintiff's Title VII and breach of contract claims were dismissed as asserted against defendants Rinker and Campbell by order of this court on October 29, 1996.

2. Defendant Michael Rinker's June 13, 1997 Motion for Summary Judgment; Defendants Sheetz, Fox Mountain, and Campbell's June 13, 1997 Motion for Summary Judgment; Plaintiff's July 2, 1997 Memorandum in Opposition to Defendants' Motions for Summary Judgment; the September 5, 1997 objections of Sheetz, Inc., Fox Mountain, Inc., and Robert Campbell to the Report and Recommendation; the September 5, 1997 objections of defendant Rinker to the Report and Recommendation; Plaintiff's Septem-

ber 5, 1997 objections to the Report and Recommendation; the September 18, 1997 Reply of Sheetz, Inc., Fox Mountain, Inc., and Robert Campbell to the Objections Filed by the Plaintiff to the Report and Recommendation of the Magistrate Judge; the September 22, 1997 Plaintiff's Response to Defendants' Objections to the Magistrate Judge's Report and Recommendation; the October 24, 1997 Motion of the Defendant to Apply the Statute of Limitations and Memorandum in Support; Plaintiff's November 7, 1997 Memorandum in Opposition to Defendants' Motion to Apply Statute of Limitations; and Defendants' November 17, 1997 Reply to Plaintiff's Opposition to Defendants' Motion to Apply the Statute of Limitations.

*quo* claim (Count I) against defendants Sheetz and Fox Mountain, and denies the motion to dismiss the Assault and Battery claim (Count III) against defendants Sheetz and Fox Mountain. The court's actions may be summarized as follows:

| Summary Judgment Defendants | Cause of Action | Magistrate | Court |
|---|---|---|---|
| Rinker | Assault and Battery | Denied | Denied |
| | Intentional Infliction of Emotional Distress | Denied | Denied |
| Campbell | Assault and Battery | Denied | Denied |
| Sheetz & Fox Mountain | Quid Pro Quo | Denied | Granted |
| | Hostile Work Environment | Denied | Denied |
| | Breach of contract | Granted | Granted |
| | Assault and battery | Granted | Denied |
| Sheetz, Fox Mountain, & Campbell: | Intentional Infliction of Emotional Distress | Denied | Denied |
| Motion to Dismiss | | | |
| Sheetz, Fox Mountain, & Campbell | Untimeliness | Not reached | Denied |

## II. Standard of Review

This court must undertake a *de novo* review of the entire case after the magistrate judge has issued the report and recommendation. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982). The parties, in their objections, have, for the most part, simply reiterated their original arguments. Therefore, for ease of organization, this court addresses the issues in proper order, rather than the objections.

## III Discussion

### A. Statute of Limitations

 Defendants Sheetz, Fox Mountain, and Campbell argue that plaintiff's claim was not timely. Under 42 U.S.C. § 2000e–5(e)(1), an EEOC charge is timely filed if filed within 180 of the date of the alleged unlawful employment practice if the state human rights agency is not a deferral agency.[3] The Virginia courts have held that the Virginia Council on Human Rights is not a deferral agency. *Tokuta v. James Madison University,* 977 F.Supp. 763 (W.D.Va.1997); *McGuire v. Commonwealth,* 988 F.Supp. 980 (W.D.Va.1997). *Dorsey v. Duff's Motel, Inc.,* 878 F.Supp. 869, 870 (W.D.Va.1995); *Foster v. Geopure Systems & Services, Inc.,* 1995 WL 852074, at *2 (E.D.Va.1995). Therefore, in order for her charge to be timely, Ms. Young must have filed within 180 days of the alleged discriminatory practice.

Plaintiff alleges that the last discriminatory act occurred on April 4, 1995. She filed on September 28, 1995,[4] 177 days after the occurrence of the last discriminatory act. Defendants assert that she had left employment due to back injuries. However, in their own pleadings the defendants admit that plaintiff "has worked as a deli clerk at Sheetz, Inc. ("Sheetz") Store 186 since April 12, 1993". Sheetz, Inc.'s, Fox Mountain, Inc.'s, and Robert Campbell's Objections to the Report and Recommendation Issued by the Magistrate Judge 4 (Sep. 5, 1997). Thus, the court finds no merit in the defendants' contention that plaintiff was no longer employed by the defendants on April 4, 1995.

Moreover, defendant Rinker was employed with Sheetz and Fox Mountain at the time of the alleged discriminatory act. Defendant Rinker states in his answer that he worked in the store only until April 1, 1995. Answer of Defendant Michael Rinker 3 (Jun. 14, 1996). However, Sheetz, Fox Mountain, and Campbell state in their answer that Mr. Rinker worked in the store until April 6, 1995, Answer of Sheetz, Inc., Fox Mountain, Inc., and Robert Campbell 2 (Jun. 17, 1996), and both Mr. Rinker's resignation letter and his Termination Form indicate that April 6, 1995 was indeed the last day on which defen-

3. Where the state agency is a deferral agency, as determined by analysis of its governing statutes, the applicable time limit is 300 days.

4. The plaintiff and defendants state that the EEOC charge was filed on September 29, 1997, but the EEOC charge attached to plaintiff's complaint is signed and dated by both plaintiff and notary public on September 28, 1995. This one day difference does not make a difference to the timeliness issue. Either date would place the EEOC charge within 180 days of April 4, 1995.

dant Rinker worked for defendants Sheetz and Fox Mountain. Letter from Michael Rinker to Robert Campbell, District Manager, and Dave Woodley, Sheetz Inc. (March 24, 1995); Sheetz, Inc. Human Resource Department Termination Form, authorized by Robert Campbell, District Manager, Sheetz Inc. (April 12, 1995). Thus, the facts indicate that, despite Mr. Rinker's Answer to the Complaint, he was still employed by Sheetz, Inc. and Fox Mountain, Inc. on April 4, 1995.

The courts have explained that when a series of Title VII violations occur, "the 180–day filing deadline is measured from the last relevant act." *Brown v. Waynesboro Nurseries, Inc.*, 1994 WL 470473, *3, (W.D.Va.), *citing, Taylor v. Home Insurance Co.*, 777 F.2d 849, 856 (4th Cir.1985); *White v. Federal Express Corp.*, 729 F.Supp. 1536 (D.Va. 1990); *Held v. Gulf Oil Co.*, 684 F.2d 427 (6th Cir.1982) (*citing, inter alia, Woodard v. Virginia Board of Bar Examiners*, 420 F.Supp. 211 (E.D.Va.1976), aff'd, 598 F.2d 1345 (4th Cir.1979)); *Weide v. Mass Transit Adm.*, 628 F.Supp. 247 (D.Md.1985). The last relevant act in the case before the court is the alleged touching or rubbing of the plaintiff's thigh by defendant Rinker on April 4, 1995. Therefore, that act was sufficient to bring the matter within the statutory filing limit. Moreover, "if at least one of a series of separate acts falls within the statutory period, 'the effect ... is to sweep within the limitations period the earlier alleged acts of discrimination.'" *NAACP Labor Committee of Front Royal, Virginia v. Laborers' Int'l Union of North America*, 902 F.Supp. 688, 706 (W.D.Va.1993) (ruling on time limits under Title VII), *quoting, Bradley v. Carydale Enterprises*, 707 F.Supp. 217, 222 (E.D.Va. 1989) (ruling on time limits under 42 U.S.C. § 1981). The defendants Sheetz, Fox Mountain, and Campbell argue that the touching of plaintiff's thigh was insufficient to bring the matter within the 180–day deadline. However, the cases to which defendants cite are inapposite. *Ritter v. Dalton*, No. 96–2063, 1997 WL 697181 (4th Cir. Nov. 7), involves an accusation that a plan was a discriminatory act. Under no circumstances could an object such as a plan become a transitive act as required by the "last relevant act" analy-

sis. In the case before the bar, circumstances exist in which the touching or rubbing of plaintiff's thigh may be considered an offensive act. This touching and the date on which it occurred was alleged by plaintiff in her EEOC charge on September 28, 1995. The court thus finds that the last alleged relevant act occurred less than 180 days before the plaintiff filed her EEOC charge and that plaintiff's charge was timely. The defendants' motion to dismiss is denied.

### B. Title VII (Counts I and II)

Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment is actionable under Title VII. In *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir.1983), the court recognized two distinct varieties of sexual harassment: "'harassment that creates an offensive environment ('condition of work') and harassment in which a supervisor demands sexual consideration in exchange for job benefits ('quid pro quo').'" *Id., quoting, Henson v. City of Dundee*, 682 F.2d 897, 908 n. 18 (11th Cir.1982). Retaliation for complaining of Title VII violations is also actionable. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985).

### C. Count I: Quid Pro Quo Sexual Harassment

A plaintiff can establish a presumption of quid pro quo sexual harassment by demonstrating a five-element prima facie case:

1. The employee belongs to a protected group;

2. The employee was subject to unwelcome sexual harassment;

3. The harassment complained of was based upon sex;

4. The employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; and

5. The employer knew or should have known of the harassment and took no effective remedial action.

*Katz v. Dole,* 709 F.2d 251, 254 (4th Cir. 1983). Plaintiff has not pled the necessary elements. Defendants Sheetz and Fox Mountain correctly argue in their motion for summary judgment that the plaintiff has failed to state a *prima facie* claim of *quid pro quo* sexual harassment under *Spencer* because she has offered no evidence that there was a "bargained-for exchange" in which she was either offered benefits for consenting or threatened with reprisals for rejecting the harassments. *Spencer* states that the fourth element in a *prima facie* case of *quid pro quo* harassment is met when "[t]he acceptance or rejection of the harassment [is] an express or implied condition to the receipt of a job benefit or *cause* of a tangible job detriment...." *Id.* (emphasis added). Reprisals need not be threatened, they need only occur. *Hott* requires only " 'some connection between the sexual conduct and some economic benefit or detriment' " *Hott v. VDO Yazaki Corp.,* 922 F.Supp. 1114 (W.D.Va. 1996), (*quoting, Walker v. Sullair Corp.,* 736 F.Supp. 94, 100 (W.D.N.C.1990), *citing, Spencer,* 894 F.2d at 658). Ms. Young has not provided evidence of an offer or threat based on sexual favors. Because plaintiff has not pled the necessary elements, the court sustains the defendants' objections to the Report and Recommendation and grants the motion for summary judgment as to the *quid pro quo* sexual harassment claim.

### D. Count II: Hostile Work Environment

■ ▮▮▮ Sexual harassment based on an offensive or hostile work environment exists "where there are sexual advances, fondling or a sexually suggestive workplace atmosphere that the claimant finds unwelcome." *Walker v. Sullair Corp.,* 736 F.Supp. 94, 100 (W.D.N.C.1990), *aff'd in part, rev'd in part on other grounds,* 946 F.2d 888 (4th Cir. 1991). "Hostile work environment is characterized by a workplace 'pervaded with sexual slur, insult and innuendo, ... verbal sexual harassment, ... or extremely vulgar and offensive sexually related epithets' directed to or about an employee." *Id.,* (*quoting, Katz,* 709 F.2d at 254).

In *Katz,* the court established a two-part analysis for identifying a "hostile work environment" created by sexual harassment: "First, the plaintiff must make a prima facie showing that sexually harassing actions took place, and if this is done, the employer may rebut the showing either directly, by proving that the events did not take place, or indirectly, by showing that they were isolated or genuinely trivial. Second, the plaintiff must show that the employer knew or should have known of the harassment, and took no effectual action to correct the situation." *Katz,* 709 F.2d at 256. As *Swentek v. USAIR, Inc.* explains, "To prove ... a [hostile work environment] claim, the plaintiff must show that the conduct in question was unwelcome, that the harassment was based on sex, and that the harassment was sufficiently severe or pervasive to create an abusive working environment." 830 F.2d 552, 557 (4th Cir.1987), (*citing, Henson,* 682 F.2d at 903–04); *see also Hammill v. Albemarle County Sch. Bd.,* Civ. Action No. 93–00031–C, 1994 WL 147753 (W.D.Va. Apr.18, 1994). However, *Swentek* further notes that, "The plaintiff also must show some basis for imposing liability on the employer." *Swentek,* 830 F.2d at 557; *see also Hammill,* at * 3–4. "[T]he standard for determining that sexual harassment constitutes a hostile environment, 'is not, and cannot by its nature be, a mathematically precise test.' " *Spicer v. Commonwealth,* 44 F.3d 218, 225 (4th Cir.1995), (*quoting, Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

In a hostile work environment claim, "the plaintiff must demonstrate that the employer had actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action." *Katz,* 709 F.2d at 255 (citing *Henson,* 682 F.2d at 905). In *Katz,* the court stated that "to avoid liability under Title VII, an employer on notice of sexual harassment must do more than indicate the existence of an official policy against such harassment." *Katz,* 709 F.2d at 256.

The Court of Appeals for the District of Columbia has held that "an employer may not be held liable for a supervisor's hostile work environment harassment if the employ-

er is able to establish that it had adopted policies and implemented measures such that the victimized employee either knew or should have known that the employer did not tolerate such conduct and that she could report it to the employer without fear of adverse consequences." *Gary v. Long,* 59 F.3d 1391, 1398 (D.C.Cir.1995); *see Bouton v. BMW of North America, Inc.,* 29 F.3d 103, 110 (3d Cir.1994) (holding that effective grievance procedures insulate the employer). An effective policy is one which is "calculated to encourage victims of harassment to come forward," *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), one about which employees know, and one that provides clear avenues for relief. *Gary,* 59 F.3d at 1398–99. The Supreme Court has not expressly ruled on the question whether an effective grievance procedure will insulate an employer. *See Meritor, supra,* 477 U.S. at 72–73, 106 S.Ct. at 2407–08 (leaving the issue unresolved).

■ Clearly, plaintiff has met the first prong of the *Katz* test. Taking her allegations as true, as the court must, sexual harassment occurred and on a constant basis. The plaintiff has presented sufficient evidence as to the insufficiency of the grievance procedure of Sheetz and Fox Mountain to indicate a factual dispute which makes the matter inappropriate for summary judgment. Sheetz suddenly instituted a campaign of awareness regarding sexual harassment in the summer of 1996. Deposition of Cindy Schaper, Human Relations Manager, Sheetz, Inc., at 79–92 (February 13, 1997). Store Manager Sherri L. Thomas suggested, in her deposition, that prior to the filing of Ms. Kidwell's and Ms. Young's suits, she was not "100 percent educated" about the sexual harassment policies of Sheetz, but "now" she is. Deposition of Sherri L. Thomas, at 31–34 (February 12, 1997). Further, in his deposition, Mr. Campbell indicated his lack of awareness of Sheetz's sexual harassment policies by suggesting that a company program for assisting with personal problems, E.A.S.E., was a proper channel for dealing with sexual harassment in the workplace. Deposition of Robert William Campbell, at 27–28 (February 12, 1997); *see* Schaper dep.

at 88–89 (indicating that E.A.S.E. does not deal with sexual harassment problems, but only non-work-related personal problems). Accepting these allegations as true, the court denies defendants Sheetz's and Fox Mountain's motion for summary judgment on this claim.

■ As to corporate defendants' objection that they lacked actual or constructive notice of the alleged harassment, Ms. Kidwell testified that she notified Ms. Schaper, the corporate officer charged with receiving and investigating employee grievances, of the individual defendants' alleged harassment. As well, Ms. Kidwell and plaintiff testified that a district manager of Sheetz, David Woodley, observed at least some of the alleged sexual harassment by Messrs. Rinker and Campbell. Finally, other employees of Sheetz complained about the defendants' conduct. Thus, unlike in *Andrade v. Mayfair Management, Inc.,* 88 F.3d 258, 261 (4th Cir.1996), there exists evidence for the fact finder to weigh and consider that the corporation "knew or should have known" of the alleged harassing behavior. Although defendants Sheetz and Fox Mountain have objected to the recommendation of the magistrate judge, the court adopts the recommendation and denies the motion for summary judgment as to Count II.

### E. Count III: Assault and Battery

All four defendants moved for summary judgment on the issue of assault and battery. Magistrate Judge Crigler recommended denial of the motions as to all four defendants based on the factual allegations in the case itself and the directive of *Plummer v. Center Psychiatrists, Ltd.,* 252 Va. 233, 476 S.E.2d 172 (1996). Naturally, all four defendants objected to this recommendation.

■ The "slightest touching of another, or of his clothes, cane, or anything else attached to his person, if done in a rude, insolent or angry manner," may be actionable as a tort of assault and battery under Virginia state law. *Wood v. Commonwealth,* 149 Va. 401, 140 S.E. 114 (1927); *Crosswhite v. Barnes,* 139 Va. 471, 124 S.E. 242 (1924). At what point nonconsensual touching becomes

assault and battery depends on intent, and intent must be discerned from its factual context. *Lynch v. Commonwealth*, 131 Va. 762, 109 S.E. 427, 428 (1921); *Wood*, 140 S.E. at 115.

■ The basis of plaintiff's claim of assault and battery against defendant Campbell is founded upon a single event: Campbell allegedly put his arm around her shoulder. Young Dep. at 177. As to defendant Rinker, plaintiff's claim rests on three incidents: he rubbed his arms against her calves "a couple of times" and put his hand on, or possibly rubbed, her thigh once.

Defendants contend that Campbell's and Rinker's contact with plaintiff does not qualify as an assault and battery because there is no evidence that the touch was rude, insolent, angry, or that it continued after plaintiff asked one or the other to cease. Plaintiff's testimony contradicts this version of events and creates a material and genuine issue for the fact finder to resolve. Young has alleged, as well, the forced cleaning of the bathrooms which, when considered as context to the touching, raise questions as to both the intent and the perception of Mr. Rinker's behavior.

■ The corporate defendants, Sheetz and Fox Mountain move for summary judgment on the assault and battery claim, stating that they are not responsible for the "personal acts" of defendants Rinker and Campbell. Because of recent changes in Virginia law of *respondeat superior*, this court finds that the magistrate judge appropriately recommended denial of summary judgment as to the assault and battery claim and, therefore, adopts that part of the Report and Recommendation despite defendants' strenuous objections.

In *Jamison v. Wiley*, the Fourth Circuit articulated the legal standard for *respondeat superior* as follows:

> [U]nder Virginia law, an act is within the scope of employment only if it is "fairly incident to [the master's] business, done while the servant was engaged upon the master's business ... done, although mistakenly or ill-advisedly, with a view to further the master's interest or from some

impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account."

14 F.3d 222, 237 (4th Cir.1994) (citations omitted) (holding that harassment by a supervisor did not fall within the scope of employment).

*Hott* stated that the test for liability under respondeat superior is "not whether the tortious act itself is a transaction within the ordinary course of the business of the master, but whether the service itself, in which the tortious act was done, was within the scope of such authority." 922 F.Supp. at 1126. A Virginia Supreme Court case from last year, *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 476 S.E.2d 172 (1996), indicates that summary judgment as to *respondeat superior* is rarely appropriate. In *Plummer*, a psychiatrist had sexual intercourse with a patient even though he was aware that, because of her mental state she was "unable to act with volition." *Id.*, 476 S.E.2d at 173. The trial court granted defendant's demurrer that the doctor was not acting in the course of his employment, but the supreme court disagreed. The court noted that the employer bears the burden of proving that the act was not within the scope of employment once the plaintiff demonstrates that an employee-employer relationship existed. *Id.*, 476 S.E.2d at 174. The court then looked to *Commercial Business Systems v. BellSouth*, 249 Va. 39, 453 S.E.2d 261 (1995), which described the haziness of the limits of scope of employment. *Id.* Both courts carefully reject assumptions about the meaning of "within the scope" and traditional rules of non-liability for malicious acts of employees. *Id.*, *citing Commercial Business Systems*, 453 S.E.2d at 266 ("The courts ... have long since departed from the rule of non-liability of an employer for wilful or malicious acts of his employee."). *Plummer* and *Commercial Business Systems* instead focus on whether the acts occur while the employee

is performing the duties of his employment. *Id.*

In the case before the court, facts have been alleged that indicate that the harassment may have occurred while the individual defendants were performing their duties as managers. In fact, part of the efficacy of the alleged harassment derived from the employment duties of Rinker, Campbell, and Ms. Young (such as the rewrapping of pornographic magazines, the cleaning of the bathrooms, the various touching while accessing the safe). Therefore, following *Plummer* and in agreement with this own court's recent opinion in *Kidwell v. Sheetz*, 1997 WL 399233 (W.D.Va. Jul.10, 1997), this court denies the defendants Sheetz's and Fox Mountain's motion for summary judgment on the claim of assault and battery on the grounds that whether the acts occurred within the scope of employment is a question of fact to be determined by a fact finder.

### F. Count IV. Breach of Contract

The corporate defendants argue that plaintiff's breach of contract claim should be dismissed as against them because plaintiff has adduced no evidence of an existing contract. The "contract" upon which plaintiff seems to base this claim is the defendant's policy statement which every employee must sign when hired. This policy statement included an express disclaimer of any contractual relationship and reaffirmed plaintiff's status as an at-will employee. As no contract was created, none could be breached. *See Barger v. General Electric Co.*, 599 F.Supp. 1154, 1159 (W.D.Va.1984); *Lane v. David P. Jacobson & Co., Ltd.*, 880 F.Supp. 1091, 1097 (E.D.Va.1995); *Orci v. Insituform East, Inc.*, 901 F.Supp. 978, 984 (D.Md.1995); *Caldwell v. Linker*, 901 F.Supp. 1010, 1016 (M.D.N.C.1995). Consequently, Magistrate Judge Crigler correctly recommended granting summary judgment on this claim, and this court adopts the recommendation. Plaintiff objected to the Report and Recommendation simply by reiterating her original argument that the policy statements are equivalent to guarantees. The court finds that this objection has no merit and overrules it for the reasons stated above.

### G. Count V: Intentional Infliction of Emotional Distress

Defendants Rinker and Campbell argue that the undisputed facts show that their conduct was neither intentional, outrageous, or causative of severe emotional distress. A plaintiff must establish four elements to prove a claim of intentional infliction of emotional distress:

One, the wrongdoer's conduct was intentional or reckless.... Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality.... Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

*Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974). Defendants contend that plaintiff has failed to allege conduct that is sufficiently egregious as to permit a finding of emotional distress.

Plaintiff has leveled sufficient factual accusations against defendant Rinker. His alleged conduct encompasses behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Paroline v. Unisys Corp.*, 879 F.2d 100, 112 (quoting Restatement (Second) of Torts § 46 cmt. d) (1989), *vacated in part on reh'g on other grounds*, 900 F.2d 27 (4th Cir.1990). Campbell's alleged behavior, both through his own comments and his toleration of the behavior of defendant Rinker, is such that a reasonable jury could find that defendants' conduct constituted "a campaign of sustained cruelty and harassment." *See Swentek* v. USAIR, *Inc.*, 830 F.2d 552, 562 (4th Cir.1987). For reasons discussed *supra*, Sheetz and Fox Mountain could be found liable for Rinker's and Campbell's behavior under the doctrine of *respondeat superior. See Hammill v. Albemarle County Sch. Bd.*, No. 93–0031–C, 1994 WL 147753, at *5 (W.D.Va. Apr.18, 1994).

Defendants Sheetz, Fox Mountain, and Campbell also question the link of causation between plaintiff's distress and her difficulties in the workplace. Defendant has pre-

sented sufficient evidence to create at least some factual issue regarding a connection between the behavior and the distress. For example, several doctors testified that plaintiff's turbulent state of mind when they saw her as a patient arose, partially at least, from of her troubles at Sheetz. *See* Deposition of Bernard James Lewis, Ph.D., at 183–89 (June 10, 1997); Deposition of Adolphe Charles Kiczales, M.D., at 110 (May 7, 1997). Magistrate Judge Crigler recommended denial of these claims and all four defendants objected to the recommendation, arguing that the behavior of Rinker and Campbell was not outrageous and that *respondeat superior* theories require that the court find the acts occurred beyond the scope of employment. The objections are without merit and, in fact, indicate the degree to which many of the issues in this case are factual disputes. Therefore, the court denies all four defendants' motions for summary judgment on the claim of intentional infliction of emotional distress.

An appropriate order this day shall issue.